*800 OPINION.
MoRRis:
The first question urged by the petitioner for our consideration is whether the book value or the fair market value should he used as the basis for determining the amount of income derived by it from commission notes, or, differently stated, whether its net income has been properly computed on the basis provided in subdivision (b) of section 212 of the Revenue Act of 1918 which provides that:
The net income shall be computed upon the basis of the taxpayer’s annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. * * *
It appears from statement of counsel for the respondent made at the hearing of this proceeding that the net income from these commission notes was computed upon the basis of their face value when received. The petitioner has adduced satisfactory evidence which convinces us that these notes could not possibly have been disposed of at their face value. In fact, one witness testifies definitely that there was no market for them. The evidence shows that the 5-year non-interest-bearing commission notes had a fair market value of only 50 per cent of their face value and that the 10-year notes had a fair market value of only 40 per cent of their face value.
In the face of the undisputed testimony it is obvious to us that the basis used by the respondent does not clearly reflect the petitioner’s true net income and that its net income has been overstated. We, therefore, hold that the net income should be recomputed for the years in controversy, substituting for the face values formerly used the fair market values incorporated in our findings of fact herein. The recomputation for 1911 should also include the commission note in the B. N. Brown transaction described in our findings of fact which, it appears, was returned by the petitioner in that year at $29,165, but from which a deduction of $19,050 was claimed for the reason that 65 per cent of the total amount thereof was not earned until after January, 1918.
The evidence offered by the petitioner in support of its second allegation of error is wholly insufficient to overcome the prima facie correctness of the respondent’s findings which we must approve.
By a supplemental petition the petitioner further alleged that during the years in controversy all of the losses sustained by the Benton Land Co. were not claimed as deductions in the computation of its net income. It is stated in that petition, and its counsel also stated at the hearing of this proceeding, that the additional allegation is *801 only for the purpose of demonstrating the good faith on the part of the petitioner in the payment of its income tax and that it ivas not for the purpose of claiming the deductions at this time, the amounts of which it could not determine. Considering the purpose for which this supplemental petition was offered, and the fact that no evidence was adduced to support the allegation that the Benton Land Co. sustained losses which were not claimed or allowed as deductions in the computation of its net income, we deem it unnecessary to consider the question further.

Judgment will be entered under Rule 50.